IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

NIEISHA GARRIS, and DAMON SHELLEY

                  PLAINTIFFS,

           -AGAINST-

THE CITY OF NEW YORK, a municipal entity, NEW
YORK CITY POLICE OFFICER CHARLES
LOVELOCK, NEW YORK CITY POLICE OFFICER
AARON LOHMAN, NEW YORK CITY POLICE
OFFICER JAMES ZOZZARO, NEW YORK CITY
POLICE OFFICER JOHN DAMMACCO, NEW YORK
CITY POLICE OFFICER JASON ZUMMO, NEW
YORK CITY POLICE OFFICERS "John and Jane
Does 1-6",

                  DEFENDANTS.

------------------------------------------------------------------------ X

**SECOND AMENDED
COMPLAINT**

**ECF CASE**

**INDEX NO.** 13-CV-2901(AJN)

       Plaintiff NIEISHA GARRIS and Plaintiff DAMON SHELLEY by their
attorneys, STECKLOW COHEN & THOMPSON, complaining of the Defendants,
respectfully allege as follows:

## I. PRELIMINARY STATEMENT

1. Plaintiff NIEISHA GARRIS and Plaintiff DAMON SHELLEY bring this action
for compensatory damages, punitive damages and attorney's fees pursuant
to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of their civil rights, as
said rights are secured by said statutes and the Constitutions of the State of
New York and the United States.

2. Shortly after the New Year was rung in on January 1, 2012, Plaintiffs DAMON
SHELLEY and NIEISHA GARRIS separately came to be observers of an
apparent incident of police brutality against several arrestees on a public
street in Queens, New York.  On observing the Plaintiffs and others lawfully
recording and commenting upon their actions, the New York City Police
Officers who were being recorded, including Defendant NEW YORK CITY
POLICE OFFICER AARON LOHMAN, Defendant NEW YORK CITY POLICE
OFFICER JAMES ZOZZARO and Defendant NEW YORK CITY POLICE

OFFICER JASON ZUMMO, called for backup.  On arrival, the significant numbers of backup New York City Police Officers, including Defendant NEW YORK CITY POLICE OFFICER CHARLES LOVELOCK, Defendant NEW YORK CITY POLICE OFFICER JOHN DAMMACCO and Defendant NEW YORK CITY POLICE OFFICERS "John Doe and Jane Does 1-6," as well as Defendant NEW YORK CITY POLICE OFFICER AARON LOHMAN and Defendant NEW YORK CITY POLICE OFFICER JAMES ZOZZARO, began apprehending observers and smashing their cellular phones and recording devices.  Plaintiffs DAMON SHELLEY and NIEISHA GARRIS were both arrested, brutalized, and subjected to racial slurs and offensive language by the Defendant Police Officers.  All charges against Plaintiffs were dismissed following adjournments in contemplation of dismissal.

3.  In sum, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS bring this claim in a quest for answers as to why they were punitively arrested, brutally beaten, subjected to improper seizures of property, detained at length, and prosecuted in the absence of probable cause to arrest and in the absence of any criminal or illegal conduct of any type or sort.

## II. JURISDICTION

4.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

5.  Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

6.  Venue is laid within the United States District Court for the Eastern District of New York in that the claims at issue here principally arose in this District.

## IV. JURY DEMAND

7.  Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS respectfully demand a trial by jury for all issues in this matter pursuant to Fed R. Civ. Pr. 38(b).

## V. THE PARTIES

8.  Plaintiff NIEISHA GARRIS is an African-American female United States Citizen who resides in Queens County, New York.

9.  Plaintiff DAMON SHELLEY is an African-American male United States Citizen who resides in Kings County, New York.

10. Defendant THE CITY OF NEW YORK ("Defendant CITY OF NEW YORK") was and is a municipal corporation organized under the laws of the State of New York

11. Defendant THE CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Law, acting under the direction and supervision of the aforementioned municipal corporation, Defendant THE CITY OF NEW YORK.

12. That at all times hereinafter mentioned, Defendant POLICE OFFICER CHARLES LOVELOCK ("Defendant PO LOVELOCK"), Defendant NEW YORK CITY POLICE OFFICER AARON LOHMAN ("Defendant PO LOHMAN"), Defendant NEW YORK CITY POLICE OFFICER JAMES ZOZZARO ("Defendant PO ZOZZARO"), Defendant NEW YORK CITY POLICE OFFICER JOHN DAMMACCO ("Defendant PO DAMMACCO"), NEW YORK CITY POLICE OFFICER JASON ZUMMO ("Defendant PO ZUMMO,"), and Defendant NEW YORK CITY POLICE OFFICERS "John Doe and Jane Does 1-6," (any or all of the above collectively, "Defendant POLICE OFFICERS," and individually, "Defendant POLICE OFFICER"), were each and all duly sworn police officers of said department and was acting under the supervision of said department and according to his official duties.

13. That at all times relevant to this action, Defendant POLICE OFFICERS, either personally or through their agents, servants and employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State or City of New York.

14. Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting within the scope and in furtherance of their employment by Defendant THE CITY OF NEW YORK.

## VI. FACTS COMMON TO ALL CLAIMS

15. At or around 1:00am on January 1, 2012, Plaintiff DAMON SHELLEY and his girlfriend were celebrating the arrival of the New Year as guests in the home of one of Girlfriend's family friends ("Family Friend") in Queens, New York, nearby the intersection of 168th Street and 115th Avenue.

16. After this period of time, Plaintiff DAMON SHELLEY heard screaming nearby.

17. Plaintiff DAMON SHELLEY went towards to the sound to investigate.

18. At or around the same time and near the same location, Plaintiff NIEISHA GARRIS was in the passenger seat of her fiancée's car as the two were returning home after a visit to Plaintiff NIEISHA GARRIS' grandmother's house and a midnight church service.

19. As Plaintiff NIEISHA GARRIS and her fiancée were approaching 168th Street and 115th Avenue, they noticed a police traffic stop that they could not drive around.

20. Wanting to see what was happening in front of their car, Plaintiff NIEISHA GARRIS and her fiancée stepped out of their car.

21. Both Plaintiffs observed a marked NYPD vehicle with its warning lights flashing.

22. Three African-American male civilians ("arrestees") were in the custody of Defendant PO LOVELOCK, DEFENDANT PO ZOZZARO, and DEFENDANT PO ZUMMO.

23. Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS began using their cellular phones to record the incident in question in order to document the Defendant POLICE OFFICERS' use of excessive force against the arrestees.

24. At or around this time, Plaintiff DAMON SHELLEY stated to the Defendant POLICE OFFICERS, in sum and substance, "They aren't resisting, why are you all treating them like that?"

25. One or more of the Defendant POLICE OFFICERS asked Plaintiff NIEISHA GARRIS, in sum and substance, "Why are you recording these arrests?"

26. Plaintiff NIEISHA GARRIS stated, in sum and substance, "I'm recording because the arrestees are in handcuffs and no longer a threat, but you all keep hitting them. I think that's wrong."

27. One or more of the Defendant POLICE OFFICERS then offered their reason for arresting the civilians.

28. Plaintiff NIEISHA GARRIS, stated, in sum and substance, "Even if you have a reason for arresting them, it's still not right for you to hit them while they are in handcuffs. You're supposed to serve and protect us and you're hitting them."

29. One or more of the Defendant POLICE OFFICERS called for backup.

30. One or more of the Defendant POLICE OFFICERS then stated, in sum and substance, **"We need backup, they have cameras."**

31. Neither Plaintiff had used any sort of force against the Defendant POLICE OFFICERS.

32. Neither Plaintiff had used any sort of offensive language toward the Defendant POLICE OFFICERS.

33. Neither Plaintiff had interfered with the Defendant POLICE OFFICERS' execution of their duties.

34. Upon information and belief, the Defendant POLICE OFFICERS only called for backup because Plaintiffs had begun recording the incident in question.

35. Upon information and belief, the Defendant POLICE OFFICERS' act of calling for backup was motivated, either wholly or in part, by a desire to retaliate against Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS for exercising their First Amendment protected rights.

36. Following the Defendant POLICE OFFICERS' call for backup, approximately twenty (20) police officers, including but not limited to DEFENDANT PO LOVELOCK and DEFENDANT PO DAMMACCO, arrived at the scene.

37. Approximately ten police cars and vans arrived at the scene.

38. The Defendant POLICE OFFICERS who were already present informed the newly-arrived officers that Plaintiff NIEISHA GARRIS and Plaintiff DAMON SHELLEY had been recording the incident in question.

39. At or around this time, the Defendant POLICE OFFICERS arrested approximately five other individuals who had been documenting and/or observing the incident in question.

## THE DEFENDANT POLICE OFFICERS
## ARREST PLAINTIFF DAMON SHELLEY

40. One or more of the Defendant POLICE OFFICERS approached Plaintiff DAMON SHELLEY and struck him with a metal baton.

41. Plaintiff DAMON SHELLEY experienced pain and injury as a result of being struck by one or more of the Defendant POLICE OFFICERS.

42. One or more of the Defendant POLICE OFFICERS knocked Plaintiff DAMON SHELLEY's cellular phone out of his hand.

43. One or more of the Defendant POLICE OFFICERS stomped on Plaintiff DAMON SHELLEY's cellular phone.

44. Upon information and belief, one or more of the Defendant POLICE OFFICERS stomped on Plaintiff DAMON SHELLEY's cellular phone with the intent of destroying the cellular phone.

45. In addition to the intrinsic value of the phone itself, this phone contained the last photographs Plaintiff DAMON SHELLEY had taken of his deceased grandmother.

46. One or more of the Defendant POLICE OFFICERS handcuffed and arrested Plaintiff DAMON SHELLEY.

47. Plaintiff DAMON SHELLEY stated to one or more of the Defendant POLICE OFFICERS, in sum and substance, "Whatever you do to me, it's on camera. I was alive when you arrested me."

48. Plaintiff DAMON SHELLEY made this statement to the Defendant POLICE OFFICERS because he feared for his life.

49. One or more of the Defendant POLICE OFFICERS punched Plaintiff DAMON SHELLEY.

50. Plaintiff DAMON SHELLEY experienced pain and injury as a result of being punched by one or more of the Defendant POLICE OFFICERS.

51. One or more of the Defendant POLICE OFFICERS slammed Plaintiff DAMON SHELLEY's face against a nearby police car.

52. Plaintiff DAMON SHELLEY experienced pain and injury as a result of being slammed face-first against a car by one or more of the Defendant POLICE OFFICERS.

53. Plaintiff DAMON SHELLEY asked one or more of the Defendant POLICE OFFICERS, in sum and substance, **"You're locking me up for recording an arrest, right?"**

54. One or more of the Defendant POLICE OFFICERS responded by stating, in sum and substance, **"Yes, that's correct."**

55. The arresting Defendant POLICE OFFICER(s) placed handcuffs around Plaintiff DAMON SHELLEY'S wrists so tightly that Plaintiff DAMON SHELLEY could neither rotate nor in any way move his wrists separate from the handcuffs.

56. Again, after he was handcuffed, one or more of the Defendant POLICE OFFICERS hit Plaintiff DAMON SHELLEY with a baton.

57. Plaintiff DAMON SHELLEY experienced pain and injury as a result of being struck by one or more of the Defendant POLICE OFFICERS.

58. The arresting Defendant POLICE OFFICER(s) did not provide Plaintiff DAMON SHELLEY with a legally cognizable reason as to why he was being arrested.

59. Plaintiff DAMON SHELLEY had not used any sort of force against the Defendant POLICE OFFICERS.

60. Plaintiff DAMON SHELLEY had not used offensive language toward the Defendant POLICE OFFICERS.

61. Plaintiff DAMON SHELLEY complied with all of the Defendant POLICE OFFICERS' orders.

62. Upon information and belief, the Defendant POLICE OFFICERS had neither a legally cognizable nor a legitimate reason for arresting Plaintiff DAMON SHELLEY.

63. Plaintiff DAMON SHELLEY was hurt and embarrassed by the Defendant POLICE OFFICERS' act of arresting him without having a legally cognizable or legitimate reason for doing so.

64. Plaintiff DAMON SHELLEY was hurt and embarrassed by the Defendant POLICE OFFICERS' act of arresting him in front of his Girlfriend as well as her family and friends.

65. Not one of the Defendant POLICE OFFICERS intervened on Plaintiff DAMON SHELLEY's behalf so as to prevent the violation of his constitutional rights.

66. Plaintiff DAMON SHELLEY was searched at the scene by one or more of the Defendant POLICE OFFICERS, who took everything out of Plaintiff's pockets.

67. One or more of the Defendant POLICE OFFICERS walked Plaintiff DAMON SHELLEY toward one of the nearby police vehicles and put him in the same.

## THE DEFENDANT POLICE OFFICERS
## ARREST PLAINTIFF NIEISHA GARRIS

68. At or around this time, Plaintiff NIEISHA GARRIS began walking back toward her car and heard one or more of the Defendant POLICE OFFICERS exclaim, in sum and substance, "Get her!"

69. One or more of the Defendant POLICE OFFICERS ran toward Plaintiff NIEISHA GARRIS.

70. One or more of the Defendant POLICE OFFICERS, without warning and from behind, grabbed Plaintiff NIEISHA GARRIS by her left wrist and pulled her arm behind her back.

71. Plaintiff NIEISHA GARRIS fell to the pavement.

72. One or more of the Defendant POLICE OFFICERS grabbed Plaintiff NIEISHA GARRIS' left arm and put handcuffs around both of her wrists.

73. The arresting Defendant POLICE OFFICER(s) placed handcuffs around Plaintiff NIEISHA GARRIS' wrists so tightly that she could neither rotate nor in any way move her wrists separate from the handcuffs.

74. Plaintiff NIEISHA GARRIS asked one or more of the Defendant POLICE OFFICERS, in sum and substance, **"Why are you all arresting me?"**

75. In response, one or more of the Defendant POLICE OFFICERS exclaimed, in sum and substance, **"Just shut up!"**

76. Plaintiff NIEISHA GARRIS complied.

77. Plaintiff NIEISHA GARRIS began crying.

78. Plaintiff NIEISHA GARRIS was hurt and embarrassed to have been arrested by the Defendant POLICE OFFICERS in front of her fiancée.

79. One or more of the Defendant POLICE OFFICERS patted down and searched Plaintiff NIEISHA GARRIS.

80. Not one of the Defendant POLICE OFFICERS intervened on Plaintiff NIEISHA GARRIS' behalf so as to prevent the violation of her constitutional rights.

81. One or more of the Defendant POLICE OFFICERS put Plaintiff NIEISHA GARRIS into the same police car as Plaintiff DAMON SHELLEY.

82. At or around this time, Plaintiff NIEISHA GARRIS' received multiple phone calls from a female cousin.

83. One of the Defendant POLICE OFFICERS, having spotted Plaintiff NIEISHA GARRIS' cellular phone ringing and surmising that Plaintiff NIEISHA GARRIS' was receiving a phone call from a female asked, in sum and substance, "Who is this woman that keeps calling, your lover?"

84. Plaintiff NIEISHA GARRIS explained, in sum and substance, "No, my cousin is calling me."

85. The same Defendant POLICE OFFICER derisively asked, in sum and substance, "**Are you sure that you're not a lesbian?"**

86. The same Defendant POLICE OFFICER stated to Plaintiff NIEISHA GARRIS, in sum and substance, **"You are gay."**

87. Plaintiff NIEISHA GARRIS was hurt and embarrassed by the Defendant POLICE OFFICER's statement.

88. One or more of the Defendant POLICE OFFICERS removed Plaintiff NIEISHA GARRIS' cellular phone, wallet, and other personal belongings from her possession.

89. Plaintiff NIEISHA GARRIS' wallet contained five hundred dollars ($500).

90. One or more of the Defendant POLICE OFFICERS —— without warning and without any apparent reason for doing so —— opened the police car's door, reached into the same, pulled Plaintiff NIEISHA GARRIS by her hair, and forcefully placed one of his knees into her back.

91. Plaintiff NIEISHA GARRIS was hurt and embarrassed by the Defendant POLICE OFFICERS' conduct.

92. Upon information and belief, the Defendant POLICE OFFICERS seized Plaintiff DAMON SHELLEY's and Plaintiff NIEISHA GARRIS' cellular phones in order to prevent them from viewing and distributing the recordings that they had taken of the incident in question.

93. Upon information and belief, the Defendant POLICE OFFICERS' seizures of Plaintiff DAMON SHELLEY's and Plaintiff NIEISHA GARRIS' cellular phones were both the indirect as well as direct result of a custom, policy, and/or practice of the NYPD in which its officers are encouraged to retaliate against civilians for lawfully documenting, observing, and/or commenting upon police activity.

94. This custom, policy, and/or practice has continued despite the consent decree entered into by Defendant THE CITY OF NEW YORK in Black v. Codd 73 Civ. 5283 (S.D.N.Y. June 1, 1977).

95. Further information relating to the Defendant POLICE OFFICERS and Defendant THE CITY OF NEW YORK's failure to comply with the Black v. Codd consent decree can be found in the appendix attached to the initial complaint in this action, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

96. This custom, policy, or practice has continued despite the NYPD Patrol Guide ("P.G.") §208-03 subsection, "Observers at the Scene of Police Incident", which provides, in relevant part, that "Taking photographs, videotapes, or tape recordings [of police activity will not constitute probable cause for arrest or detention of an onlooker unless the safety of officers or other persons is directly endangered, the officers reasonably believe they are endangered, or the law is otherwise violated.]"

97. Plaintiffs' act of recording the incident in question did not endanger the Defendant POLICE OFFICERS.

98. Plaintiffs' act of recording the incident in question did not endanger any of the persons who were present.

99. Upon information and belief, the Defendant POLICE OFFICERS did not reasonably believe that Plaintiffs' act of recording the incident was endangering the safety of the officers or any other persons present.

100.    Plaintiffs' act of recording the incident in question was not unlawful in any way.

101.    Conversely, Plaintiffs' actions were lawful exercises of their First Amendment protected rights to free speech, expression, and association.

102.    Further information relating to the above constitutionally impermissible conduct of the Defendant POLICE OFFICERS can be found in the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

## THE DEFENDANT POLICE OFFICERS TRANSPORT PLAINTIFF DAMON SHELLEY AND PLAINTIFF NIEISHA GARRIS TO THE 113th PRECINCT

103.    At or around this time, two of the Defendant POLICE OFFICERS sat in the front of the same police car as Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS.

104.    One of the Defendant POLICE OFFICERS began making threatening gestures toward Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS.

105.    One of the Defendant POLICE OFFICERS began making gestures toward Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS that Plaintiffs perceived as threatening.

106.    One of the Defendant POLICE OFFICERS stated to Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS, in sum and substance, **"We should have shot you all, that would have shut you up."**

107.    Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were hurt and disturbed by the Defendant POLICE OFFICER's statement.

108.    Plaintiff NIEISHA GARRIS asked one or both of the Defendant POLICE OFFICERS to return her cellular phone.

109.    Either or both of the Defendant POLICE OFFICERS exclaimed to Plaintiff NIEISHA GARRIS, in sum and substance, "Shut the fuck up, bitch!"

110.    Plaintiff NIEISHA GARRIS was hurt and embarrassed by the Defendant POLICE OFFICER(s)' statement.

111.    Either or both of the Defendant POLICE OFFICERS stated to Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS, in sum and substance, "What we're doing to you right now is nothing compared to what you'll get at the precinct."

112.    Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS —— handcuffed and beaten —— were hurt by the Defendant POLICE OFFICERS' implicit threat to use more severe force against them at the precinct.

113.   Plaintiff DAMON SHELLEY asked one or more of the Defendant POLICE OFFICERS if he, Plaintiff DAMON SHELLEY, could speak with a police sergeant.

114.    In response, one or more of the Defendant POLICE OFFICERS stated, in sum and substance, "No, you can't, and you're going to pay when you get to the precinct."

**PLAINTIFF DAMON SHELLEY AND PLAINTIFF**
**NIEISHA GARRIS ARRIVE AT THE 113th PRECINCT**

115.   The Defendant POLICE OFFICERS continued to engage in aggressive, forceful, and offensive conduct as they walked Plaintiffs into the precinct.

116.   Plaintiffs spotted at least two garbage cans at the 113th Precinct that were filled with beer cans.

117.   Upon information and belief, several, if not all, of the Defendant POLICE OFFICERS present when Plaintiffs arrived at the precinct had recently been, or currently were, in the process of consuming alcoholic beverages.

118.   The NYPD Patrol Guide, at P.G. § 203-06 subsection, "Performance on Duty – Prohibited Conduct" explicitly proscribes officers' consumption of intoxicants when in uniform, whether on or off duty.

119.   Upon information and belief, several, if not all, of the Defendant POLICE OFFICERS who were present when Plaintiffs arrived at the precinct were violating P.G. § 203-06.

120.   At or around this time, one or more the Defendant POLICE OFFICERS removed Plaintiff NIEISHA GARRIS' wallet and personal belongings.

121.   At or around this time, one or more the Defendant POLICE OFFICERS once again removed the contents of Plaintiff DAMON SHELLEY's pockets.

122.   The Defendant POLICE OFFICER(S) counted Plaintiffs money for vouchering.

123.   Plaintiff DAMON SHELLEY saw that they counted only approximately five-hundred and fifty dollars ($550.00) instead of the eighteen hundred dollars ($1,800.00) that Plaintiff had before being handcuffed and searched by the police.

124.   Plaintiff NIEISHA GARRIS was briefly taken for a medical interview with the precinct's medical unit.

125.   Plaintiff NIEISHA GARRIS explained to the woman conducting the interview ("Medical Interviewer") that the Defendant POLICE OFFICERS had injured her wrists.

126.   Medical Interviewer advised Plaintiff NIEISHA GARRIS that if she were to receive medical treatment she would have to spend a longer amount of time in police custody.

127.   Plaintiff NIEISHA GARRIS —— owing to the fact that she had already been unlawfully arrested and subjected to unnecessary force while within the custody of the Defendant POLICE OFFICERS  —— declined medical treatment.

128.   While on the way to the holding cells, Plaintiff DAMON SHELLEY spotted one of the original arrestees ("Initial Arrestee") from a few hours before.

129.   While on the way to the holding cells, the Defendant POLICE OFFICERS continued to subject Plaintiffs, and other recent arrestees present, to continuous heckling.

130.   Such heckling by the Defendant POLICE OFFICERS included, but was not limited to: using force against Plaintiffs, and other recent arrestees, by grabbing and shoving them.

131.   Such heckling by the Defendant POLICE OFFICERS included, but was not limited to: using racial slurs toward Plaintiffs and other recent arrestees.

132.   **The Defendant POLICE OFFICERS called Plaintiffs, and other recent arrestees,** in sum and substance, **"Black monkey beasts."**

133.   **The Defendant POLICE OFFICERS called Plaintiffs, and other recent arrestees present,** in sum and substance, **"Porch monkeys and lowlives."**

134.   **The Defendant POLICE OFFICERS called Plaintiffs, and other recent arrestees,** in sum and substance, **"Ugly black n–ggers."**

135.   Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were mentally and emotionally shocked, hurt, disturbed, and embarrassed as a result of the Defendant POLICE OFFICERS' conduct and statements.

136.   After the Defendant POLICE OFFICERS locked Plaintiff DAMON SHELLEY within one of the holding cells, Plaintiff DAMON SHELLEY asked one or more of the Defendant POLICE OFFICERS if he could be taken to the hospital to receive medical treatment for his injuries.

137.   Plaintiff DAMON SHELLEY asked the Defendant POLICE OFFICERS to provide him with medical treatment due to the severe and intense pain that he was experiencing due to the Defendant POLICE OFFICERS' act of slamming him, face-first, against one of the police cars at the scene of the incident in question.

138.   The Defendant POLICE OFFICERS' repeated uses of force exacerbated a prior injury to Plaintiff DAMON SHELLEY's back.

139.    Plaintiff DAMON SHELLEY had received surgery on his back approximately one week prior to the incident in question.

140.    Plaintiff DAMON SHELLEY asked one or more of the Defendant POLICE OFFICERS to provide him with medical treatment on at least two occasions.

141.    One or more of the Defendant POLICE OFFICERS responded to Plaintiff DAMON SHELLEY's repeated requests by stating, in sum and substance, "Wait, we'll see."

142.    The Defendant POLICE OFFICERS never provided Plaintiff DAMON SHELLEY with medical treatment.

143.    The Defendant POLICE OFFICERS detained Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS at the precinct for approximately eighteen hours.

144.    The Defendant POLICE OFFICERS transported Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS to Queens Central Booking at approximately 8:00pm, January 1st, 2012.

145.    Shortly before the Defendant POLICE OFFICERS transported Plaintiffs to Central Booking, one of the Defendant POLICE OFFICERS apologized to Plaintiff NIEISHA GARRIS by stating, in sum and substance, "I'm sorry that you had to go through this."

146.    Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were both arraigned the following morning, January 2nd, 2012.

147.    Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS later accepted Adjournments in Contemplation of Dismissal for the charges that had been brought against them.

148.    Plaintiff NIEISHA GARRIS' wallet was returned to her with only twenty-seven dollars ($27.00) of the five hundred dollars ($500.00) that were in her wallet on the evening of the incident in question.

149.    Plaintiff NIEISHA GARRIS sought treatment for her injured left wrist on or around the day following her release from Central Booking.

150.    The doctor whom Plaintiff NIEISHA GARRIS saw at North Shore-Long Island Jewish Health System informed her that she had nerve damage in her left wrist.

151.    Upon information and belief, the Defendant POLICE OFFICERS' arrest of Plaintiff NIEISHA GARRIS and Plaintiff DAMON SHELLEY were "contempt of cop" and/or "cover charge" arrests.

152.    Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of

13

governmental administration are relatively easy for police to levy in the absence of actual probable cause because they may arise out of nearly any police-civilian interactions.

153.   Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration are relatively easy for police to levy in the absence of actual probable cause because they can be levied solely upon the allegations of the arresting officer(s) without reference to physical evidence or witness observation of criminal acts.

154.   Upon information and belief, to date, Defendant THE CITY OF NEW YORK has not implemented any particular, training, oversight measures or policies designed or intended to curtail the improper use by New York City POLICE OFFICERS of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration.

155.   Upon information and belief, and despite due and repeated notice that New York City POLICE OFFICERS have an ongoing custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, to date, Defendant CITY OF NEW YORK has not implemented any particular training, oversight measures or policies designed or intended to curtail the improper use by New York City POLICE OFFICERS of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration.

156.   The particular arrests of Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS are believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because they were undertaken in a manner which indicated that the individual Defendants who participated in Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS' arrests made the determination to arrest them before determining why they should be arrested.

157.   The particular arrests of Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS are believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals.

158.   Upon information and belief, the Defendant POLICE OFFICERS' arrests of Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS, were motivated, in whole, or in part, by a custom, practice, or policy relating to unconstitutional "productivity goals", whereby police officers arrest individuals in the absence of probable cause in order to meet "arrest quotas" set by their supervising and superior officers.

159.   Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS continue to feel traumatized by the events of January 1, 2012, and are wary and fearful when they see NYPD officers.

160.   Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS take efforts to avoid police officers when in public.

161.   Further information regarding the existence of the aforesaid constitutionally-violative policies and practices, Defendant CITY OF NEW YORK'S knowledge and failure to address the same are set forth in the appendix to this complaint.

162.   As a result of the above constitutionally impermissible conduct, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, and damage to their reputations and standings within their communities.

163.   As a result of Defendants' impermissible conduct, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS demand judgment against Defendants in a sum of money to be determined at trial.

**FIRST CLAIM FOR RELIEF**
**DEPRIVATION OF FEDERAL CIVIL RIGHTS**
**UNDER 42 U.S.C. § 1983**

164.    Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

165.    All of the aforementioned acts of the Defendants and their agents, servants and employees, were carried out under the color of state law.

166.    All of the aforementioned acts deprived Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation

of 42 U.S.C. § 1983.

167.   The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

168.   The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the Defendant THE CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of said department.

169.   The individual Defendants and Defendant THE CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

170.   As a result of Defendants' impermissible conduct, Plaintiffs demands judgment against Defendants in a sum of money to be determined at trial.


**SECOND CLAIM FOR RELIEF**
**FALSE ARREST UNDER 42 U.S.C. § 1983**

---

171.   Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

172.   As a result of the aforesaid conduct by Defendants, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were subjected to illegal, improper and false arrests by the Defendant POLICE OFFICERS and taken into custody and caused to be falsely imprisoned, detained, and confined without any probable cause, privilege, or consent.

173.   As a result of the foregoing, Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS' liberties were restricted for an extended period of time; they were put in fear for their safety and were caused to suffer embarrassment and humiliation, without probable cause.

174.   As a result of Defendants' impermissible conduct, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS demand judgment against Defendants in a sum of money to be determined at trial.

## THIRD CLAIM FOR RELIEF
## FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

_____

175.    Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

176.    The Defendant POLICE OFFICERS had an affirmative duty to intervene on Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS' behalf in order to prevent the above-referred violations of their constitutional rights.

177.    The Defendant POLICE OFFICERS failed to intervene on Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS' behalf in order to prevent the violation of their constitutional rights despite having had realistic opportunities to do so.

178.    The individual Defendant POLICE OFFICERS failed to intervene on Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS' behalf in order to prevent the violation of their constitutional rights despite having substantially contributed to the circumstances within which Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS' rights were violated by Defendants' affirmative conduct.

179.    As a result of the aforementioned conduct of the individual Defendants, Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS' constitutional rights were violated.

180.    As a result of Defendants' impermissible conduct, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS demand judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

_____

181.    Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

182.    Defendants administered a brutal beating upon Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS in the absence of need for such action and force.

183.    Defendants collectively threw, shoved, slammed, and subjected Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS to several physically aggressive maneuvers without identifying a requisite need for such action and force.

184.    The level of force employed by Defendants against Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS was objectively unreasonable.

185.    The force employed by Defendants against Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS did not advance any proper government objective.

186.    As a result of the aforementioned conduct of Defendants, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were subjected to excessive force and sustained physical injuries.

187.    As a result of the aforementioned conduct of the Defendant POLICE OFFICERS, Plaintiff NIEISHA GARRIS suffered and sustained injuries to her left wrist.

188.    As a result of the aforementioned conduct of the Defendant POLICE OFFICERS, Plaintiff DAMON SHELLEY suffered and sustained injuries to his face and back.

189.    As a result of Defendants' impermissible conduct, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS demand judgment against Defendants in a sum of money to be determined at trial.


**FIFTH CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM**
**UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. §1983**

_____

190.    Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

191.    Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS also incorporate herein by reference the contents of the appendix attached to the initial complaint herein, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

192.    The individual Defendants arrested, incarcerated, and brutalized Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS for perceived "contempt of cop," notwithstanding their knowledge that said arrests and incarceration would

jeopardize Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS', wellbeing, safety, and constitutional rights.

193.    The individual Defendants arrested, incarcerated, and brutalized Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS for exercising their First Amendment protected rights by documenting and commenting upon police activity, notwithstanding their knowledge that said arrests and incarceration would jeopardize Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS', wellbeing, safety, and constitutional rights.

194.    The individual Defendants arrested, incarcerated, and brutalized Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS because they knew that they could do so without consequences, notwithstanding their knowledge that said arrests and incarceration would jeopardize Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS', wellbeing, safety, and constitutional rights.

195.    The acts complained of were carried out by the individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

196.    The acts complained of were carried out by the individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendant THE CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of said department.

197.    The aforementioned customs, policies, usages, practices, procedures and rules of the Defendant THE CITY OF NEW YORK and the NYPD include, but are not limited to, the following unconstitutional practices:

> a) Wrongfully arresting individuals without probable cause due to perceived lack of respect for the police officer (i.e., "contempt of cop" arrests);
>
> b) Wrongfully arresting individuals without probable cause in attempt to justify excessive uses of force (i.e. "contempt of cop" "cover charge" arrests; condoning brutality);
>
> c) Wrongfully arresting innocent persons in order to meet quantitative "productivity goals" (i.e., arrest quotas);
>
> d) Wrongfully arresting persons without probable cause due to perceived lack of respect for the police officer; in order to teach a lesson in respect while also satisfying quantitative "productivity goals" (i.e., "contempt of cop" arrests used to satisfy arrest quotas);
>
> e) The continuing practice or custom of New York City police officers utilizing disproportionate force in a punitive, retaliatory or otherwise wrongful manner in interactions with individuals and groups of individuals engaged in the exercise of their First Amendment protected rights to free speech and expressive association;

f) The continuing practice or custom of condoning arrests undertaken without probable cause by officers of the New York City Police Department's 113th Precinct to justify excessive uses of force, brutality and other misconduct by officers of the New York City Police Department's 113th Precinct against members of Queens' African American community.

198.   As a result of the aforementioned conduct by Defendants, Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS' constitutional rights were violated.

199.   As a result of the above constitutionally-impermissible conduct, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages and damage to their reputations and standings within their communities.

200.   As a result of Defendants' impermissible conduct, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS demand judgment against Defendants in a sum of money to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM
## THE MUNICIPAL DEFENDANTS' PROMULGATION OF
## UNCONSTITUTIONAL ARREST QUOTAS UNDER 42 U.S.C. §1983

201.   Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

202.   Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS also incorporate herein by reference the contents of the appendix attached to the initial complaint herein, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

203.   Upon information and belief, the arrests of Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were motivated wholly by Defendants' need to meet quantitative enforcement "productivity goals" promulgated by Defendant THE CITY OF NEW YORK.

204.   Upon information and belief, the arrests of Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were motivated in part by Defendants' need to meet quantitative enforcement "productivity goals" promulgated by Defendant THE CITY OF NEW YORK.

205.   As a result of the aforementioned conduct of Defendants, Plaintiffs DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS' constitutional rights were violated.

206.   As a result of Defendants' constitutionally-violative conduct, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, and damage to their reputations and standings within their communities.

207.   As a result of Defendants' impermissible conduct, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS demand judgment against Defendants in a sum of money to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**
**EQUAL PROTECTION UNDER 42 U.S.C. § 1983**

208.   Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

209.   That at all times described herein, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

210.   The individual Defendants arrested, incarcerated and brutalized Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS for perceived "contempt of cop," notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS', wellbeing, safety, and constitutional rights.

211.   The individual Defendants arrested, incarcerated and brutalized Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS for documenting and commenting upon the Defendants' arrests of and repeated unnecessary uses of force against three civilians, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS', wellbeing, safety, and constitutional rights.

212.   The individual Defendants arrested and incarcerated Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS to meet quantitative "performance goals," notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff DAMON SHELLEY'S, wellbeing, safety, and constitutional rights.

213.   The individual Defendants arrested, incarcerated and brutalized Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS because they knew that they could do so with impunity, notwithstanding their knowledge that said arrest and

incarceration would jeopardize Plaintiff DAMON SHELLEY'S, wellbeing, safety, and constitutional rights.

214.   That the acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

215.   That the acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendant CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of said department.

216.   That following their arrest, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were charged with crimes and violations.

217.   That the above described charges were a pretext intended to justify Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS' illegal arrests.

218.   That the actions of Defendants heretofore described, constituted unlawful detention, imprisonment, assault and battery and were designed to and did cause specific bodily harm, pain and suffering both in violation of Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS' exercise of their civil and constitutional rights of free speech, free expression, and expressive association as guaranteed by the First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

219.   The particular arrests of Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS are believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals.

220.   The particular arrest of Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS are believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals, because the Defendants informed Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS that they were being arrested after it was already established that neither Plaintiff DAMON SHELLEY nor Plaintiff NIEISHA

GARRIS were carrying any weapons or illegal substances, and did not have any outstanding warrants against them.

221.   Defendants, through their actions, carried out a discriminatory application of such laws, driven by a discriminatory motivation of what might otherwise be facially neutral statutes due to a perceived ease of prosecution.

222.   As a result of the aforementioned conduct, Defendants have violated Plaintiff DAMON SHELLEY'S and Plaintiff NIEISHA GARRIS' constitutional rights to equal protection, and thus Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS are entitled to seek redress under 42 U.S.C. §1983, and are further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

223.   As a result of the above constitutionally impermissible conduct, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to their reputations and standings within their communities.

224.   As a result of Defendants' impermissible conduct, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS demand judgment against Defendants in a sum of money to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**
**RETALIATION FOR FIRST AMENDMENT**
**PROTECTED EXPRESSION UNDER 42 U.S.C. § 1983**

225.   Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

226.   At or around the time that Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS came into contact with Defendants, they engaged in protected speech and conduct, including but not limited to: documenting and commenting upon the Defendants' arrest and unnecessary uses of force against three civilians, and protesting the manner in which they, Plaintiffs, were being treated by Defendants.

227.   Defendants took adverse action against Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS in order to punish them for engaging in protected speech and conduct.

228.   Defendants took adverse actions against Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS by using wrongful and unjustified force upon Plaintiffs.

229.   Defendants took adverse action against Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS by unlawfully arresting them.

230.   Defendants took adverse action against Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS by falsely accusing them of crimes and violations.

231.   Defendants took adverse action against Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS by taking them into police custody and detaining them against their will.

232.   Upon information and belief, there was a causal connection between the protected speech and conduct engaged in by Plaintiffs and the adverse actions taken by Defendants.

233.   The causal connection between the protected speech and conduct engaged in by Plaintiffs and the adverse actions taken against them by Defendants was demonstrated by, among other things, the fact that Defendants used excessive force against Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS in the absence of justification.

234.   The causal connection between the protected speech and conduct engaged in by Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS and the adverse actions taken against them by Defendants was demonstrated by, among other things, the fact that Defendants only called for back up after becoming aware that Plaintiffs were documenting and commenting upon the Defendants' arrests of three civilians.

235.   Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were taken into police custody and detained against their will.

236.   Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were subjected to prosecution.

237.   The above-described charges were pretexts intended to justify Defendants' illegal arrests of Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS.

238.   The actions of the Defendants heretofore described, constituted unlawful detention, imprisonment, assault and battery and were designed to and did cause bodily harm, pain and suffering both in violation of Plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for their exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by the First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

239.   Defendants' actions were undertaken under color of law and would not have existed but for Defendants using their official power.

240.   Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS.

241.   Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of Plaintiff DAMON SHELLEY's and Plaintiff NIEISHA GARRIS' constitutional rights.

242.   All of the foregoing acts by Defendants deprived Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS of federally protected rights, including, but not limited to, the right:

> A. Not to be deprived of liberty without due process of law;

> B. To be free from seizure and arrest not based upon probable cause;

> C. To free speech and expression; and

> D. To receive equal protection under the law.

243.   As a result of the above constitutionally impermissible conduct, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to their reputations and standings within their communities.

244.   As a result of Defendants' impermissible conduct, Plaintiff DAMON SHELLEY and Plaintiff NIEISHA GARRIS demand judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be in the Interest of justice.

DATED:      New York, New York
            October 31, 2013

                              Respectfully submitted,


                              _____~//s//~_____
                              SAMUEL B. COHEN [SC 7406]
                              STECKLOW, COHEN & THOMPSON
                              10 Spring Street Suite 1
                              New York, New York 10012
                              [212] 566-8000
                              [212] 202-4952/FAX
                              ATTORNEYS FOR PLAINTIFFS
                              DAMON SHELLEY & NIEISHA GARRIS

26